UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Holy Love Ministry, | ) | CASE NO. 1:13 CV 1830 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| United States of America, et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**Introduction**

This matter is before the Court upon Defendant's Motion to Dismiss First Amended Complaint (Doc. 17). This is a Federal Tort Claims Act case. For the reasons that follow, defendant's motion is GRANTED.

**Facts**

Plaintiff, Holy Love, is a non-profit ministry. Holy Love was a member of St. Paul Croatian Credit Union ("St. Paul"), which was federally chartered. In 2010, Holy Love had two accounts at St. Paul, an operating account with a balance of $651,605.71 and a building account with a balance of $1,088,049.00. The accounts were set up by Joseph Plavac, an officer of Holy

Love and a member of St. Paul's Board of Directors.

In April 2010, the National Credit Union Association ("NCUA") was alerted to the possibility of a massive fraud at St. Paul perpetrated by its CEO.  The NCUA, established by the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1741 et seq., serves both as regulator/insurer and conservator/liquidating agent for insured credit unions.  As regulator/insurer, the NCUA conducts examinations of credit unions and makes payment on insured shares from the National Credit Union Share Insurance Fund. 12 U.S.C. §§ 1756 and 1781 to 1785.  As conservator/liquidating agent, the NCUA Board steps into the shoes of the insured credit union, and succeeds to "all rights, titles, powers, and privileges of the credit union . . . ." 12 U.S.C. § 1787(b).

On April 19, 2010, Kimberly Paige, an NCUA Problem Case Officer, was ordered to investigate the potential fraud at St. Paul.  The NCUA confirmed the fraud on April 21, 2010.  On April 22, 2010, Josip Gojevic was appointed interim manager at St. Paul.  That same day, Plavac attempted to withdraw money from Holy Love's accounts at St. Paul. At that time, Paige believed there was a possible FBI investigation into Holy Love and Plavac.  Gojevic, at Paige's direction, informed Plavac that he "needed to hold out taking money" from the Holy Love accounts at St. Paul.  Gojevic complied.

On April 23, 2010, St. Paul was placed into conservatorship.  At the beginning of the conservatorship, the NCUA instituted a withdrawal limit of $5,000 per week.  On April 26, 2010, the NCUA, as conservator, posted a letter that stated:  "On a case by case basis, the conservator will consider requests to an exception to this policy [the withdrawal limit] for example in the event of an emergency to meet a previously established commitment, such as a

home purchase." (Compl. ¶ 46). Holy Love requested an exception due to a two-year building project it was in the process of completing. Its requests were denied and Holy Love was later told that no exceptions were being made despite the existence of the letter. Other St. Paul customers were assisted in restructuring their accounts to maximize insurance coverage. The NCUA did not call or meet with Holy Love to restructure their accounts.

St. Paul was liquidated on April 26, 2010. The liquidating agent for St. Paul determined that, as a non- profit, Holy Love was entitled to the maximum $250,000 insurance coverage, leaving an uninsured balance of $1,502,148.82. Holy Love appealed to the NCUA Board which found against it. Holy Love then petitioned for review in federal court under the Administrative Procedures Act, arguing it was entitled to $500,000 insurance coverage, $250,000 for each account. On October 11, 2013, Judge Nugent granted the NCUA Board's Motion for Summary Judgement, finding its insurance determination was not arbitrary and capricious.[1] The court noted that the accounts of a corporation are insured up to $250,000 in the aggregate, citing 12 C.F.R. § 745.2(c)(1).

Holy Love filed its First Amended Complaint on January 15, 2014. The Complaint raises claims against the United States under the Federal Tort Claims Act. Count One is a claim for conversion. Count Two is a claim for negligence. Count Three is a claim for breach of fiduciary duty. Count Four is a claim for breach of contract. Count Five is a claim for unjust enrichment. The government now moves to dismiss the Complaint, arguing that sovereign immunity bars plaintiff's case and that the Complaint fails to state claims upon which relief can be granted.

---

[1] The Court takes judicial notice of the records in *Holy Love v. National Credit Union Administration, et al.*, No. 1:11 CV 1256 (N.D. Ohio Oct. 11, 2013). *See United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1978).

Holy Love opposes the motion.

### Standard of Review

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986).  This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  The party need only show that the complaint alleges a substantial claim under federal law. *Id.*  A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id.*  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.*  Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id.*  In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.*, 111 F.2d 979, 982 (S.D. Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)).  Instead, the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 819 (S.D. Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

### Discussion

The government argues that this Court lacks jurisdiction because the United States has not waived its sovereign immunity.

The United States, as a sovereign, cannot be sued without its prior consent, and the terms of its consent define the Court's subject matter jurisdiction. *McGinness v. U.S.,* 90 F.3d 143, 145

(6th Cir. 1996).  A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied. *U.S. v. King,* 395 U.S. 1,4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Soriano v. U.S.,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).  Holy Love brings its claims against the government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2871-2680.  The FTCA "grants a limited waiver of sovereign immunity and allows tort claims against the United States in the same manner and to the same extent as a private individual under like circumstances." *Chomic v. United States*, 377 F.3d 607, 609 (6th Cir. 2004) (citing 28 U.S.C. § 2674).

### 1. The discretionary function exception

The FTCA expressly exempts the United States from liability for:

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

This provision is referred to as the "discretionary function" exception.  In determining whether the alleged wrongdoing falls within the discretionary function exception, the Court first asks if the conduct involves a matter of choice for the employee. *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).  If the conduct does involve a matter of choice, the Court determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 437.  In *Gaubert,* the United States Supreme Court elaborated on *Berkovitz* and held that only those decisions "susceptible to a policy analysis" are protected by the discretionary function exception. *United States v. Gaubert*, 499

U.S. 315, 325  (1991).  It further held that if a "regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 324.

The government argues that all of plaintiff's claims against the United States are barred because of the FTCA's discretionary function exception.  According to the government, there are no regulations mandating action by the NCUA as insurer/regulator or as conservator/liquidator that were not followed.  Prior to the conservatorship, the NCUA was acting under its examination powers as St. Paul's regulator.  Under NCUA regulations, the NCUA is vested with broad authority to make recommendations to credit unions, and Paige made a recommendation to Gojevic to tell Plavac not to take out funds from Holy Love's accounts.  The government further argues that there are no regulations which require any specific action of the NCUA in its role as conservator.   The NCUA could create a hardship exception which it might then decide not to grant to Holy Love.  The government also argues that there is no regulation which requires the NCUA to assist customers with restructuring their accounts.  In any case, Holy Love, as a non-profit, could not have restructured its accounts.

In response, Holy Love first contends that pre-conservatorship direction from Paige at the NCUA to Gojevic at St. Paul directing Holy Love not to withdraw money was not a discretionary function.  Rather, this constituted a seizure of its money by the government.  In order for the government to properly seize its money, it must follow the directives set forth in 18 U.S.C. §§ 981, 983, which were not done in this case.  Second, Holy Love argues that the government is liable for not granting it a hardship exception without any explanation.  Finally,

6

Holy Love argues that the government is liable for failing to advise it to restructure its accounts in order to maximize federal insurance coverage.

Upon review, the Court finds that the government's motion is well-taken. Examining the actions taken by the government which form the basis of Holy Love's claims, the Court finds that the two-part test in *Berkovitz* is satisfied.

### a. First *Berkovitz* Prong

Holy Love objects that Paige's directive to Plavac through Gojevic contravenes the requirements of 18 U.S.C. §§ 981, 983. The Court is wholly unpersuaded by Holy Love's citation. These statutes do not mandate a method of conduct for a government employee to follow when advising a credit union on the brink of default. Rather, they detail the procedures by which the government is to seize money that is subject to forfeiture to the United States because of its relation to a list of enumerated offenses. The money at St. Paul was not forfeited to the United States but appears to have been secreted away by a St. Paul employee. These statutes do not apply. Plaintiff's argument on this point is rejected. Holy Love also fails to point to any statute which proscribes a course of conduct for the NCUA while acting as the conservator/liquidator for St. Paul.

Accordingly, the Court finds that the government's pre- and post-conservatorship actions meet the first prong of the discretionary function exception. *Accord Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1131 (10th Cir. 1999) (finding first prong of *Berkovitz* met where plaintiff failed to identify regulation that the government failed to follow); *Baum v. United States,* 986 F.2d 716, 720 (4th Cir. 1993) ("The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a

specific course of action.").

### b. Second *Berkovitz* Prong

Turning to the second prong of the *Berkovitz* test, the Court asks whether the activity was "of the kind that the discretionary function exception was designed to shield." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954.  Only those decisions "susceptible to policy analysis" are protected by the exception. *Gaubert,* 499 U.S. at 325.  However, the Supreme Court has held that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324.   When making the second inquiry, the court is not to consider the subjective intent of the particular actor or whether he or she was animated by a concern for public policy. *Id.* at 325. Instead, there must be facts in the record which establish that the government's actions were not grounded in policy considerations to defeat the presumption. *See Elder v. United States*, 312 F.3d 1172, 1182 (10th Cir. 2002) (noting that the facts of a case may overcome the *Gaubert* presumption); *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1410 (10th Cir. 1997) (finding presumption overcome where the court could discern no public policy consideration and the government acknowledged that cost was not a factor in its decision).

 Holy Love argues that Paige's direction to not withdraw funds was a seizure of its property and was not the type of activity the discretionary function exception was designed to protect.  The government in contrast points to several statutes, regulations, and agency guidelines that give it discretion.  Prior to conservatorship, the NCUA was acting under its examination powers granted under the FCUA.  The FCUA provides the NCUA with authority to

8

"perform such other functions or acts as it may deem necessary or appropriate to carry out the provisions of [the FCUA], in accordance with the rules and regulations or policies established by the [NCUA] Board not inconsistent with [the FCUA][.]" 12 U.S.C. § 1766(i). Under NCUA regulations, NCUA regional offices are responsible for formulating standards and procedures for the examination and supervision of federal credit unions. 12 C.F.R. § 790.2(b)(5). Under the NCUA's Examiner's Guide, an examiner has the authority to "make recommendations [to credit unions] for action based on the conclusion reached and final risk assessments." (Doc. 12-3). Here, the government contends that Paige was under the impression that the FBI was investigating Plavac and Holy Love's accounts. The government maintains that Paige's recommendation to Gojevic constitutes a good faith policy judgement aimed at helping to secure the undercapitalized credit union. As such, it meets the second prong of *Berkovitz*.

Upon review, the Court finds that the statutory and regulatory provisions cited by the government establish that, in Paige's directive to Plavac, the NCUA was vested with discretion in how to act to protect the financial stability of the credit union it was charged with overseeing. Holy Love has failed to provide proof that the decision was not grounded in policy considerations. The Court therefore concludes that the government is entitled to the presumption in *Gaubert* and the discretionary function exception applies.

Holy Love fails to make any argument that the NCUA's post-conservatorship actions, related to the hardship exception and account restructuring, were not grounded in policy considerations. On the other hand, the government points to several statutes which allow it to exercise discretion here. Under the FCUA, the NCUA may "immediately take possession and control of the business and assets of any insured credit union in which . . . the [NCUA] Board

9

determines that such action is necessary . . . ." 12 U.S.C § 1786(h)(1).   Upon beginning conservatorship, the NCUA succeeds to "all rights, titles, powers, and privileges of the credit union . . . ." 12 U.S.C. § 1787(b).  Additionally, the FCUA grants the NCUA Board authority to "take any action authorized by this Act which the Board determines is in the best interests of the credit union, its account holders, or the Board." 12 U.S.C. § 1787(b)(2)(J).  These statutes, the government argues, vest the NCUA with discretion in managing a failed credit union's affairs upon conservatorship.

Upon review, the Court finds that there are regulations in place which also afford discretion to the NCUA in post-conservatorship actions. *Accord Lafayette Fed.Credit Union v. United States*, 76 F. Supp. 2d 645, 653 (D. Md. 1999) ("[A] reasonable reading of the statute amply supports the view that [the FCUA] grants NCUA and its staff broad discretion in managing a failed financial institution.").  And Holy Love has failed to provide evidence that the government's decisions were not grounded in policy considerations here.

The Court, therefore, concludes that the second prong of the *Berkovitz* test is satisfied. The government is entitled to the protection of the discretionary function exception for all of Holy Love's claims.

### 2. The misrepresentation exception

The government also argues that the misrepresentation exception to the FTCA bars plaintiff's claims.  The FTCA expressly states sovereign immunity is not waived for "[a]ny claim arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 2680(h).  This has become known as the "misrepresentation exception," and it bars recovery for claims for intentional or negligent concealment, misrepresentation, or omission of material fact. *United States v. Neustadt,* 366 U.S.

696, 705–06, 708–09, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); *Block v. Neal,* 460 U.S. 289, 298, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); *Reynolds v. United States,* 643 F.2d 707, 712 (10th Cir. 1981) ("The 'misrepresentation' exception of 28 U.S.C. § 2680(h) has been broadly construed to include false representations of any type."). To determine whether a claim is barred by this exception, the Court must examine the nature of the conduct upon which the tort claim is based. *See McNeily v. United States,* 6 F.3d 343, 347 (5th Cir.1993). The label of "misrepresentation," accordingly, is irrelevant. The question instead is whether the government's misstatement is "essential" to the claim. *See Schneider v. United States,* 936 F.2d 956, 961 (7th Cir. 1992).

Upon review, the Court finds that plaintiff's claims are also barred by the misrepresentation exception to the FTCA.

In its Complaint, Holy Love asserts that "Paige told Gojevic at St. Paul's to inform Joe Plavac that he 'needed to hold out taking the money.'" (Doc. 15 ¶ 23). The Complaint states that "Paige knew that the statement to Gojevic was false and that Plavac did not 'need' to hold out taking Holy Love's money," the statement from Gojevic to Plavac was "material," and Holy Love "relied" on that statement. (Doc. 15 ¶¶ 25, 34, 36). Holy Love states that the NCUA offered to consider St. Paul members for a hardship exception to the withdrawal limits it put in place at the beginning of the conservatorship. Its request for an exception was denied "with no true consideration. The offer seems to have been misleading or fraudulent." (Doc. 15 ¶ 48). Holy Love also alleges that the NCUA contacted St. Paul members with account balances over $250,000 and invited them to correct their accounts for full insurance coverage. "Holy Love did not get a call. Others did. Why Holy Love was discriminated against is unknown." (Doc. 15 ¶ 55). Therefore, Holy Love contends that the government is liable for not exercising due care

11

when Paige instructed Gojevic to tell Plavac to hold out taking money out of St. Paul, for denying its hardship exception, and for failing to restructure its accounts.

As to Holy Love's claims regarding Paige's conduct, these allegations clearly state a claim for misrepresentation.[2]  Holy Love contends that this conflates their negligence claim with negligent misrepresentation.  The Court disagrees. The Complaint alleges the essential elements of negligent or fraudulent misrepresentation.

The Court is not persuaded that Holy Love's citation to *Block v. Neil* warrants a different result. 460 U.S. 289 (1983).  In *Block*, the Supreme Court indicated the misrepresentation exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Id*. at 297.  However, the Supreme Court also indicated that courts should examine the factual basis of the allegations to see if the misrepresentation exception applied. *Id*.  Here, Holy Love's claims against the government about the NCUA's pre-conservatorship actions centers on Paige's statement to Gojevic.  If she had not made the alleged recommendation, Holy Love would not have a claim.  Similarly, Holy Love's argument regarding the hardship exception is unpersuasive.  The Complaint states that the offer of an hardship exception "seems to have been misleading or fraudulent."  Misrepresentations by the government are essential to Holy Love's

---

[2]  The government's liability in an FTCA claim is determined by the substantive laws of the state in which the alleged tort occurred. *Huddleston v. United States*, 485 Fed. Appx. 744, 745 (6th Cir. 2012).  In Ohio, fraud consists of (a) a representation (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation, and (f) a resulting injury proximately caused by reliance. *See Groob v. Keybank*, 843 N.E.2d 1170 (Ohio 2006).

12

claims and as such the misrepresentation exception protects the government's sovereign immunity here. *Accord Nicklas v. United States*, 13CV1122, 2014 WL 309323 (W.D. Pa. Jan. 27, 2014).

Likewise, the Court finds that Holy Love's claim for failing to help it restructure its accounts would also be barred by the misrepresentation exception.  Holy Love claims that the government failed to contact it to help restructure its accounts to maximize insurance coverage.  Without the alleged failure to assist in restructuring, Holy Love's injury would not have occurred.  However, the misrepresentation exception also encompasses a failure to communicate. *United States v. Neustadt*, 366 U.S. 696, 706-07, 81 S. Ct. 1294, 1300, 6 L. Ed. 2d 614 (1961); *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1266 (11th Cir. 2000).  As such, Holy Love's claim against the government on this point is also barred by the misrepresentation exception.

**Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss First Amended Complaint (Doc. 17) is GRANTED.  The case is DISMISSED.[3]

IT IS SO ORDERED.

                                                    /s/ Patricia A. Gaughan
                                                 PATRICIA A. GAUGHAN
                                                 United States District Judge

Dated: 5/29/14

---

[3] Because the Court has concluded that the government's sovereign immunity remains intact and the Court is without jurisdiction, the Court does not consider the government's arguments under Rule 12(b)(6).